UNITED STATES of America, Plaintiff,

v.

Lawrence K. IRVIN, et al.,
Plaintiffs–Intervenors,

v.

COUNTY OF LOS ANGELES, et al., Defendants.

No. CV 88–5435–Kn(Ex).

United States District Court,
C.D. California.

Aug. 9, 1989.

Sheila K. Delaney and Robert S. Berman, Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff.

Richard K. Simon and Linda M. Bullen, McDermott, Will & Emery, Los Angeles, Cal., for defendants.

## OPINION AND ORDER

CHARLES F. EICK, United States Magistrate.

On July 28, 1989, Plaintiff United States of America ("Plaintiff") filed a motion to compel discovery. Defendant County of Los Angeles ("County") opposed the motion. Following briefing, the Court heard oral argument on August 4, 1989.

For the reasons discussed herein, Plaintiff's motion is granted. The County and its employees are ordered to respond to deposition questions in a manner consistent with this Opinion.

## BACKGROUND

Plaintiff brought this action under section 2 et seq. of the Voting Rights Act, which forbids practices that result in "a denial or abridgement of the right of any citizen of the United States to vote on account of race or color ..." 42 U.S.C. § 1973 et seq. Plaintiff challenges a redistricting plan adopted by the County Board of Supervisors on September 24, 1981.

Plaintiff seeks to discover evidence concerning the intent with which the Board adopted the plan and rejected certain alternatives. More specifically, Plaintiff seeks to discover communications occurring between the Supervisors and their staff members during non-public meetings immediately preceding the plan's adoption.[1] The County has objected to this discovery, arguing that the communications are irrelevant and protected by a "deliberative process" privilege.[2] The County's position has curtailed the questioning of several deponents. All parties request a definitive ruling regarding the scope of relevant dis-

---

1. Plaintiff has disclaimed any intention of discovering the Supervisors' wholly *uncommunicated* motivations. This Court expresses no opinion as to whether any such discovery would be relevant or nonprivileged.

2. During depositions, the County appeared to concede the relevance of the challenged inquiries. *See* May 30, 1989 deposition of Burke Roche, pp. 87–89. However, relevance objections generally are preserved and need not be asserted during a deposition. Fed.R.Civ.P. 32(d)(3)(A).

covery and the applicability of the privilege asserted.

### I. *The Discovery Sought Is Relevant.*

■ Prior to the 1982 amendments to the Voting Rights Act, plaintiffs were required to prove that a practice "was intentionally adopted or maintained by state [or local] officials for a discriminatory purpose." *Thornburg v. Gingles*, 478 U.S. 30, 35, 106 S.Ct. 2752, 2758, 92 L.Ed.2d 25 (1986); *see Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). The 1982 amendments eliminated the need to prove the intent underlying the challenged practice. *Thornburg v. Gingles, supra*, 478 U.S. at 43–45, 106 S.Ct. at 2762–2763; *see* Senate Report No. 97–417, p. 16, 26–27 (1982) ("Senate Report"). Plaintiffs now may prove a Voting Rights Act violation by demonstrating that "as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice." *Thornburg, supra*, 478 U.S. at 44, 106 S.Ct. at 2763 (citations and quotations omitted).

The County argues that the 1982 amendments eliminated the relevance as well as the necessity of proving intent. The amendments' legislative history and subsequent case law refute this argument.

The Senate Report reflects that Congress intended to provide prospective plaintiffs with the option of proving *either* discriminatory intent *or* discriminatory result.

"The amendment to the language of Section 2 is designed to make clear that plaintiffs need not prove a discriminatory purpose in the adoption or maintenance of the challenged system [or] practice in order to establish a violation. Plaintiffs must either prove such intent, or, alternatively, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process." Senate Report, p. 27.

"Plaintiff may establish discriminatory intent for purposes of this section, through direct or indirect circumstantial evidence ...". Senate Report, p. 27, n. 108.

Subsequent to the amendments, circuit courts have held that plaintiffs may carry their burden by "fulfilling *either* the more restrictive intent test or the results test ..." *McMillan v. Escambia County*, 748 F.2d 1037, 1046 (5th Cir.1984); *see Ketchum v. Byrne*, 740 F.2d 1398, 1406–1409 (7th Cir.1984), *cert. denied*, 471 U.S. 1135, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985). The Supreme Court's decision in *Thornburg v. Gingles, supra*, is not contrary. Following *Thornburg*, district courts have continued to permit proof of legislative intent in Voting Rights Act cases. *See, e.g., Dillard v. Baldwin County Board of Education*, 686 F.Supp. 1459, 1460 (M.D.Ala.1988); *United States v. Wicomico County*, Civ. No. S87–2557 (D.Md. April 14, 1989).[3]

Finally, even if discriminatory legislative intent no longer suffices to prove a Voting Rights Act violation, evidence of such intent remains relevant. Proof that a result was intended has some tendency in reason to prove that such result occurred. Moreover, the Senate Report provides that, even under the "results" test, the "policy underlying" the challenged practice remains relevant. Senate Report, p. 29; *see Thornburg v. Gingles, supra*, 478 U.S. at 45, 106 S.Ct. at 2763; *see also* 42 U.S.C. § 1973 ("the totality of circumstances" may demonstrate a Voting Rights Act violation).

### II. *There Exists A Federal Privilege Protecting The Deliberations Of Local Legislators.*

■ Federal privilege law applies in this case. Fed.R.Evid. 501; *see generally* 2 Weinstein's Evidence § 501[02] (1988) (in federal question cases, federal privilege law, rather than the privilege law of the forum state, generally applies). Despite a paucity of federal case law directly on point, this Court concludes that there exists a federal common law privilege protecting

---

**3.** It is also worth noting that the 1982 amendments left intact terminology in 42 U.S.C. § 1973c referring to the "purpose" of the challenged practice.

the deliberative processes of local legislators.

■ Federal law recognizes a privilege for pre-decisional, non-factual, non-public communications occurring within federal agencies. *See, e.g., In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 580–81 (E.D.N.Y.1979). "The primary rationale for the intra-governmental opinion privilege is that effective and efficient governmental decisionmaking requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders." *Id.*

The issue of whether a deliberative process privilege protects state legislators recently has been described as an "open question." *Corporacion Insular de Seguros v. Garcia,* 709 F.Supp. 288, 296 (D.P.R. 1989). The Third Circuit opined that the deliberative process privilege protecting federal executive officials "provides a useful analogy for a confidentiality-based privilege for state legislators …" *In re Grand Jury,* 821 F.2d 946, 958 (3rd Cir. 1987), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). In *United States v. Hooker Chemicals & Plastics Corp.,* 114 F.R.D. 100 (W.D. N.Y.1987), a district court apparently applied a deliberative process privilege to communications involving state legislators. Other courts have applied a like privilege to communications involving local, non-legislative officials. *See, e.g., Grossman v. Schwarz,* 125 F.R.D. 376 (S.D.N.Y.1989); *Skibo v. New York,* 109 F.R.D. 58, 63–64 (E.D. N.Y. 1985).

Proposed Federal Rule of Evidence 509 would have accorded a federal privilege for "official information," which was broadly defined to include "intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policymaking functions." This proposed rule does not appear to have been limited to federal or executive bodies. "Although Congress eliminated Rule 509, together with the other specific rules of privilege, it never rejected the concept it embodied." *In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577 (E.D. N.Y.1979).

In terms of the alleged need for secrecy surrounding deliberations, there is no principled distinction between the County Supervisors and those government officials who currently enjoy a deliberative process privilege. If there exists a need to protect candid, private communications among federal executive officials and their staff, the need to protect candid, private communications among county officials and their staff is no less compelling.[4] Therefore, this Court finds that the Supervisors' pre-decisional, non-factual, non-public deliberations are privileged.

Plaintiff argues that the United States Supreme Court's decision in *United States v. Gillock,* 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) precludes recognition of a deliberative process privilege for state or local legislators.[5] In *Gillock,* at issue was whether a state legislator's private, deliberative communications must be excluded from a federal criminal prosecution. The Court held this evidence admissible, based upon "the legitimate interest of the Federal Government in enforcing its criminal statutes …". *United States v. Gillock, supra,* 445 U.S. at 373, 100 S.Ct. at 1194. The *Gillock* decision plainly does not control the present civil discovery question.[6]

**4.** The ironic premise of the deliberative process privilege appears to be that a democratic government functions more effectively when the electorate remains ignorant of how governmental decisions actually are reached. This irony notwithstanding, the deliberative process privilege is too firmly entrenched in federal law for this Court to question the wisdom of recognizing such a privilege.

**5.** Plaintiff also cites an unpublished district court decision that appears to have relied exclusively upon *United States v. Gillock, supra. Gingles v. Edmisten,* No. 81–803–Civ–5 (E.D.N.C. January 5, 1982).

**6.** Neither does Plaintiff's citation of *United States v. Yonkers Board of Education,* 80–Civ. 6761(LBS) (S.D.N.Y. December 27, 1982) persuade the Court that there exists no deliberative process privilege protecting state legislators. The *Yonkers* Court ignored the relevance of proposed Federal Rule of Evidence 509. Unlike the present circumstance, the forum state in

**III.** *In The Present Case, The Deliberative Process Privilege Must Yield To The Need For Disclosure.*

■ As the County concedes, "the deliberative process privilege is a qualified rather than an absolute privilege." *Zinker v. Doty,* 637 F.Supp. 138, 141 (D.Conn. 1986). The Court must balance a number of factors in determining whether to uphold or override this qualified privilege. These factors include:

1. "The interest of the litigants, and ultimately of society, in accurate judicial fact finding." *In re Franklin, supra,* 478 F.Supp. at 582; *see Mobil Oil Corp. v. Department of Energy,* 520 F.Supp. 414, 417 (N.D.N.Y.1981).

2. "The relevance of the evidence sought to be protected." *Zinker v. Doty, supra,* 637 F.Supp. at 141.

3. The availability or unavailability of comparable evidence from other sources. *See, e.g., In re Franklin, supra,* 478 F.Supp. at 586; *United States v. Hooker Chemicals & Plastics Corp.,* 114 F.R.D. 100, 102 (W.D.N.Y.1987).

4. The "seriousness of the litigation and the issues involved." *In re Franklin, supra,* 478 F.Supp. at 583; *see Zinker v. Doty, supra,* 637 F.Supp. at 141.

5. The presence of issues concerning alleged governmental misconduct. *See, e.g., United States v. Board of Education,* 610 F.Supp. 695, 700 (N.D.Ill. 1985); *Dowd v. Calabrese,* 101 F.R.D. 427, 431–32 (D.D.C.1984); *Wood v. Breier,* 54 F.R.D. 7, 12 (E.D.Wis.1972).

6. The role of the government in the litigation itself. *Zinker v. Doty, supra,* 637 F.Supp. at 141; *In re Franklin, supra,* 478 F.Supp. at 583.

7. The possibility of future timidity by government employees. *Zinker v. Doty, supra,* 637 F.Supp. at 141; *In re Franklin, supra,* 478 F.Supp. at 583.

8. The federal interest in the enforcement of federal law. *See, e.g., United States v. Phoenix Union High School District,* 681 F.2d 1235 (9th Cir.1982), *cert. denied,* 459 U.S. 1191, 103 S.Ct. 1169, 75 L.Ed.2d 422 (1983); *Grossman v. Schwarz,* 125 F.R.D. 376, 381 (S.D.N.Y.1989); *Skibo v. New York, supra,* 109 F.R.D. at 64 (E.D.N.Y.1985); *see also United States v. Gillock,* 445 U.S. 360, 373, 100 S.Ct. 1185, 1193, 63 L.Ed.2d 454 (1980).

The desirability of accurate fact finding argues in favor of disclosure (as it would in every case). As previously discussed, the withheld information is directly relevant to the validity of the redistricting plan. *See Arlington Heights v. Metropolitan Development Corp.,* 429 U.S. 252, 268, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977) ("contemporary statements by members of the decisionmaking body" are highly relevant to the question of whether the body purposed invidious discrimination).

As counsel for the County conceded during argument, other than the withheld communications, there is little evidence concerning the events immediately preceding the Board's adoption of the final redistricting plan. The transcript and minutes of the public September, 1981 meeting provide scant explanation for the Board's decision.

"[I]nquiry into the mental processes of administrative decision-makers is usually to be avoided. And where there are administrative findings that were made at the same time as the decision ... there must be a strong showing of bad faith or improper behavior before such inquiry may be made. But here there are no such formal findings and it may be that the only way that there can be effective judicial review is by examining the decision-makers themselves." *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 820–21, 28 L.Ed.2d 136 (1971).

*Yonkers* did not recognize the privilege claimed. Compare *Yonkers, supra,* at 14 *with County of Los Angeles v. Superior Court,* 13 Cal.3d 721, 119 Cal.Rptr. 631, 532 P.2d 495 (1975) and Cal.Evid. Code § 1040 (California law provides a privilege for official information). The Court is also unpersuaded by the decision in *Corporacion Insular de Seguros v. Garcia,* 709 F.Supp. 288 (D.P.R. 1989), where the Court confined the deliberative process privilege to executive officials and yet accorded state legislators a quasi-"Speech or Debate Clause" privilege.

As to the seriousness of the litigation, Plaintiff's allegations raise profound questions concerning the validity of the redistricting plan. Although the County denies Plaintiff's allegations, the County has not contended that those allegations are frivolous.

Plaintiff's allegations may implicate intentional or negligent governmental misconduct. *See Kelly v. San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987) ("It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities"). Plaintiff's allegations place in issue the Supervisors' deliberations themselves. In this regard, the present case is similar to *United States v. Board of Education,* 610 F.Supp. 695, 700 (N.D.Ill. 1985), wherein the Court stated:

"Clearly, then, this is not the usual 'deliberative process' case in which a private party challenges governmental action or seeks documents via the Freedom of Information Act, and the government tries to prevent its decisionmaking process from being swept up unnecessarily into public. Here the decisionmaking process is not 'swept up into' the case, it *is* the case.... Thus, the Secretary's assertion of the privilege, if sustained, could have the harmful effect of preventing this Court from fulfilling its very mission on remand and depriving the Board of a full hearing on its case." *Id.*

The County's role in the litigation and the possibility that discovery will inhibit the Supervisors' future communications militate against disclosure. The significance of these factors is difficult to gauge. Disclosure does not threaten pecuniary liability, since the Supervisors generally are immune from such liability. *See Kuzinich v. Santa Clara,* 689 F.2d 1345, 1349–50 (9th Cir.1982). In the criminal context, the Supreme Court characterized the impact of disclosure on state legislators' future deliberations as "speculative" and "minimal." *United States v. Gillock,* 445 U.S. 360, 373, 100 S.Ct. 1185, 1193, 63 L.Ed.2d 454 (1980).

This Court is not convinced that the occasional instance in which disclosure may be ordered in a civil context will add measurably to the inhibitions already attending legislative deliberations.

Finally, the federal interest in enforcement of the Voting Rights Act weighs heavily in favor of disclosure. In *United States v. Phoenix Union High School District, supra,* 681 F.2d at 1237–38, the Ninth Circuit indicated that discovery of a decisionmaking body's minutes may be required to prove federal statutory violations even where state law guaranteed the minutes' confidentiality. Similarly, district courts have overridden local officials' privileges found to be in conflict with the enforcement of federal civil rights laws. *Grossman v. Schwarz,* 125 F.R.D. 376, 381 (S.D.N.Y.1989); *Skibo v. New York,* 109 F.R.D. 58, 64 (E.D.N.Y.1985).

The federal interest in the present case is compelling. The Voting Rights Act forbids local practices that abridge the fundamental right to vote. This Act requires vigorous and searching federal enforcement.

After balancing all of the pertinent factors, this Court concludes that the Supervisors' deliberative process privilege must yield in this instance to the need for disclosure. Plaintiff's motion is granted.