FLORIDA ASSOCIATION OF REHA-BILITATION FACILITIES, INC., et al., Plaintiffs,

v.

STATE OF FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, et al., Defendants.

No. TCA 95–40438–WS.

United States District Court, N.D. Florida, Tallahassee Division.

Nov. 30, 1995.

258

Steven M. Weinger, Special, Kurzban, Kurzban & Weinger, Miami, FL, for Florida Association of Rehabilitation Facilities Incorporated.

Chesterfield Smith, Jr., Special, State of Florida, Civil Litigation, HRS Field Office, Tallahassee, FL, for Florida Department of Health & Rehabilitative Services.

## ORDER

SHERRILL, United States Magistrate Judge.

This case is on this court's miscellaneous docket. It was initiated by an emergency motion to quash subpoenas for deposition duces tecum. Doc. 1. The Florida Legislature has moved for a protective order regarding depositions of legislative staff employees Patsy Eccles, Lynn Dixon, Cathie Herndon, and Jim DeBeaugrine. Doc. 9. Plaintiffs have filed a reply. Doc. 15. This order only concerns the motion for protective order.

### I. Procedural status of the motion

The underlying suit is pending in the Southern District of Florida, Case No. 89–0984–CIV–MOORE. A preliminary injunction was granted on September 11, 1991, by District Judge Nesbitt, doc. 15, ex. 1, and the case is set for trial on February 5, 1996. The suit was brought by non-profit corporations which provide health care services to Medicaid-eligible developmentally disabled persons in intermediate care facilities in the State of Florida. Florida has elected to receive federal funds for these facilities by participating in the Medicaid program. Order Granting Preliminary Injunction, doc. 15, ex. 1, p. 2.

The Boren Amendment to the Medicaid Act creates the claim relied upon by Plaintiffs here, and defines the scope of permissible discovery. As found by the court in the Southern District:

Title 42 U.S.C. § 1396(a)(13), the Boren Amendment to the Medicaid Act, requires states participating in the federal medicaid program to establish a plan offering reimbursement for the provision of services in an intermediate care facility for the mentally retarded ("ICF/MR"). At least once per year, the State must make findings, and make assurances satisfactory to the federal government, that the established rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards."

Order Granting Preliminary Injunction, doc. 15, ex. 1, p. 7, citations omitted. The court also ruled in that order:

Because a purpose of the Boren Amendment is to give states flexibility to establish their own plans, the statute and accompanying regulations do not define this standard precisely. For the same reason, the federal government reviews only the reasonableness of the state's assurances; it does not review the state's findings or the underlying financial data itself.

*Id.* The court in the Southern District enjoined the Defendants "from inadequately reimbursing providers of care in the ICF/MR program." *Id.*, p. 16.

*Wilder v. Virginia Hosp. Assn.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) held that the Boren Amendment creates a substantive right enforceable by health care providers "to have states adopt rates that it correctly finds are reasonable and adequate to meet the necessary costs of an efficient provider." Order Granting Preliminary Injunction, doc. 15, ex. 1, p. 7, citing *Wilder*, 496 U.S. at 508 and 523, 110 S.Ct. at 2517 and 2525. "That right is not merely a procedural one that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy; rather the Act provides a substantive right to *reasonable and adequate rates* as well." *Wilder*, 496 U.S. at 510, 110 S.Ct. at 2517 (emphasis added). "It would make little sense for Congress to require a State to make findings without requiring those findings to be correct." *Id.*, 496 U.S. at 514, 110 S.Ct. at 2520.

The parties have agreed that the "rates" which are at issue in this case are established by a subdivision of the Florida Department of Health and Rehabilitative Services, an executive agency, by administrative rule adopted in accordance with Chapter 120, Florida Statutes. The motion for a protective order asserts that these legislative staff employees will be compelled to testify as to matters learned solely in their roles assisting elected legislative representatives, and that a blanket privilege from attendance at a deposition is warranted. It is asserted that the

information sought is readily available from alternative sources. Doc. 9.

## II. Ripeness

■ "It is well settled that a witness whose testimony is subpoenaed cannot simply refuse to appear altogether on grounds of privilege, but rather must appear, testify, and invoke the privilege in response to particular questions." *In Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit,* 783 F.2d 1488, 1518 (11th Cir.), *cert. denied sub nom. Hastings v. Godbold,* 476 U.S. 1112, 106 S.Ct. 1965, 90 L.Ed.2d 651 (1986) (the *Hastings* case).[1] The witnesses here have not appeared at their depositions and asserted their privilege in the context of specific questions. Accordingly, the question of the operation of a privilege in a specific setting is not ripe.

■ The Florida Legislature, however, contends that because the four deponents are full time staff members of the legislature, there is no testimony they could provide which would not have been derived within the scope of their legislative duties. With the exception of the issue of the role of the deponents as members of the Social Services Estimating Conference, Plaintiffs do not disagree. Accordingly, the question of whether there is a legislative evidentiary privilege which would preclude *all* questions pertaining to the legislative duties of the deponents (other than with regard to the Estimating Conference) is ripe for consideration by the court. *See In re Grand Jury,* 821 F.2d 946, 955 (3rd Cir.1987), discussed ahead.

## III. The Social Services Estimating Conference

Two of the proposed deponents, Patsy Eccles and Lynn Dixon, both work for the Florida Legislature and serve upon the Social Services Estimating Conference. Plaintiffs contend that they wish to ask questions of both concerning information they obtained while serving in the latter capacity. Plaintiffs contend that this Conference does not perform legislative functions, and thus no claim of legislative privilege could be applicable, even if one were to exist.

■ The Social Services Estimating Conference is created by Fla.Stat. § 216.136(6). The purpose of the Conference is to develop "official information" concerning the social service system as the Conference "determines is needed for the state planning and budgeting system." *Id.* Except for the director of the Division of Economic and Demographic research of the Joint Legislative Management Committee, the "principals" of this Conference are not public officers named by title. The "principals" include the Executive Office of the Governor (the person from that office is chair), and "professional staff" with "forecasting expertise" from the Department of Health and Rehabilitative Services, the Senate, the House of Representatives, and "their designees." *Id.*

By mandate of Fla.Stat. § 216.133(1), the Social Services Estimating Conference and seven other Estimating Conferences are the principals of the Consensus Estimating Conference. That Conference is tasked with the job of developing "official information" for the state planning and budgeting system. "Official information" is defined as "the data, forecasts, estimates, analyses, studies, and other information which the principals of a consensus estimating conference unanimously adopt for purposes of the state planning and budgeting system." Fla.Stat. § 216.133(2). The Consensus Estimating Conference has the job of developing "such official information within its area of responsibility as the conference determines is needed for purposes of the state planning and budgeting system." Fla.Stat. § 216.134(1).

Fla.Stat. § 216.011(s), however, not surprisingly defines the "Legislative Branch" as "the various officers, committees, and other units of the legislative branch of state government." Estimating Conferences are not

---

1. Privilege ordinarily must be asserted specifically, in a concrete factual circumstance. *United States v. Argomaniz,* 925 F.2d 1349, 1356 (11th Cir.1991) (Fifth Amendment privilege against self incrimination); *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984) and *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1342 (D.C.Cir.1984) (assertion of privilege in general).

defined as a unit of the legislative branch. The fact that the membership of such Conferences includes employees of the Executive Branch is evidence that they are not, at least with respect to the definition in Chapter 216.

The Florida Legislature reads *Chiles v. Children A, B, C, D, E, and F*, 589 So.2d 260 (Fla.1991) as supportive of their argument that the Social Services Estimating Conference is a legislative body. The contention is not supported by the *Chiles* case or Florida precedent concerning the separation of state governmental powers.

■ The Florida Constitution has long been interpreted by Florida courts as rather strictly forbidding the delegation of the legislative function to either the executive or judicial branches. *E.g., Chiles v. Children A, B, C, D, E, and F*, 589 So.2d at 264; *Askew v. Cross Key Waterways*, 372 So.2d 913, 924–926 (Fla.1978). *Chiles* held that Fla.Stat. § 216.221 (1989) violated the principle of separation of powers by assigning to the executive branch the authority to reapportion the appropriated budget because the authority delegated was not guided by sufficiently definite legislative standards.

■ *Chiles* reaffirmed the fundamental principle that the power to raise revenue, to appropriate public funds for specific purposes, and to reduce an appropriation, is solely a legislative power under Florida law. 589 So.2d at 264–265, 267. *Chiles* also pointed out that Fla.Stat. § 216.081(2) provides:

All of the *data* relative to the *legislative branch and to the judicial branch* shall be for information and guidance in estimating the total financial needs of the state for the ensuing fiscal year; *none of these estimates shall be subject to revision or review by the Governor, and they must be included in his recommended budget.*

(Emphasis added.) From this the Court concluded that "the legislature recognized the threat to its own constitutional sovereignty and, in passing chapter 216, excluded itself from executive review." 589 So.2d at 268.

Thus, to the extent that an Estimating Conference provides data which relates to the financial needs of the legislative and judicial branches of Florida government, the legislature claims for itself, as it rightly should, the constitutional right to decide to what extent the data is correct and to what extent it will rely upon the data in determining revenue measures and appropriations to fund the legislative and judicial branches.

Obviously the same is true with respect to any data relating to the financial needs of the executive branch. While the legislature undoubtedly gives serious consideration to the estimates of the Estimating Conferences with regard to executive branch appropriations, since the act of appropriation is fundamentally legislative, it would be a violation of the organic law of Florida for the legislature to find itself bound by those estimates. This is so because members of the executive branch serve on the Conferences, and the Governor's appointee is chair. Only the elected legislators themselves can discharge their legislative responsibilities under the Florida constitution. *Chiles* mandates this result. Accordingly, information derived by the two deponents which was obtained from communications among the Social Services Estimating Conference members, or from persons providing information to the Conference, is entitled to no legislative privilege.

## IV. Whether staff members of state legislators have a federal qualified privilege from discovery in this suit

Two of the deponents are to be deposed solely in their capacities as staff members of the Florida Legislature, and the other two will be deposed in part in that capacity. Accordingly, the court still must determine whether there is a privilege which protects such staff members from having to attend these depositions at all.

■ Jurisdiction in this case is premised upon a federal question. Thus, privilege is a matter of federal law. *Cf. Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.1992); Fed. R.Evid. 501. The authority of this court to recognize a new federal privilege which precludes discovery is very limited:

Testimonial exclusionary rules and privileges contravene the fundamental principle that "the public ... has a right to every man's evidence." ... As such, they must

be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) (citations omitted).

*Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) discusses some of the interests at stake with respect to the claimed privilege, but it does so in a different context. In *Tenney*, the Supreme Court held that by the enactment of 42 U.S.C. §§ 1983 and 1985, Congress did not intend to override the absolute immunity at common law of state legislators from suit. The Court has since clarified that its holding was not based upon either the federal Speech or Debate Clause, which does not apply to state legislators, or similar clauses which might appear in state constitutions. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979); *United States v. Gillock*, 445 U.S. 360, 372, 100 S.Ct. 1185, 1193, 63 L.Ed.2d 454 (1980).

Further, *Tenney* concerned only immunity from suit, not a state legislative evidentiary privilege. The latter question arose in *United States v. Gillock*. *Gillock* determined that federal common law does not recognize an evidentiary privilege comparable to the Speech or Debate Clause of the United States Constitution for state legislators in a federal criminal prosecution. It thus held that a state legislator has no privilege to bar the introduction of evidence of his legislative acts in a federal criminal case charging him with bribery.

In the course of its analysis, *Gillock* said that the existence of a state law privilege was not an irrelevant matter with respect to whether a federal privilege should be recognized, but held that the fact that the Tennessee Constitution had an evidentiary privilege for a state legislator which might be asserted in a state criminal prosecution was insufficient to compel a conclusion that there is an analogous privilege in a federal criminal prosecution. 445 U.S. at 368 and n. 8,

100 S.Ct. at 1191 and n. 8. The Court identified two purposes underlying the Speech or Debate Clause, "to avoid intrusion by the Executive or Judiciary into the Affairs of a coequal branch, and second, the desire to protect legislative independence," and held that the need to accommodate those purposes should be examined to determine whether an evidentiary privilege for a state legislator should be recognized. 445 U.S. at 369, 100 S.Ct. at 1191.

The first, separation of powers, was found by the Court to be not applicable at all because the Supremacy Clause overrides "competing state exercises of power." 445 U.S. at 370, 100 S.Ct. at 1192. Nor did the Court find that extension of a kind of speech or debate type privilege to state legislators in federal prosecutions was necessitated by comity. At least with respect to the issue of separation of powers, the Court found that federal interference with the state legislative process is not on the same footing as federal judicial interference with the federal legislative process. 445 U.S. at 370, 100 S.Ct. at 1192.

The second rationale, interference with the state legislative process itself, was deemed by the *Gillock* Court to be more significant. The Court observed that "*Tenney* reflects this Court's sensitivity to interference with the functioning of state legislators...." 445 U.S. at 372, 100 S.Ct. at 1193. The Court reasoned, however, that the interest in avoiding such interference was considerably less when a federal criminal prosecution was at stake than when, as in *Tenney*, a civil action was brought by a private plaintiff to vindicate private rights. *Id.* The Court concluded "that although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." 445 U.S. at 373, 100 S.Ct. at 1193. "Here, we believe that recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process." 445 U.S. at 373, 100 S.Ct. at 1194.

The only other federal case cited to this court which directly concerned whether there is a federal common law evidentiary privilege for state legislators is found in *In re Grand Jury*, 821 F.2d 946 (3rd Cir.1987), *cert. denied sub nom. Colafella v. United States*, 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). The issue again arose in a criminal context, but this time in the context of discovery. In that case, a select state legislative committee had conducted an investigation into potential criminal activity in the procurement of granite for an expansion of the state capital in Pennsylvania. A federal grand jury subpoena had been directed to the legislators involved seeking the results of the investigation. The legislators asserted a federal common law privilege against disclosure. 821 F.2d at 949.

The Third Circuit first held that "... a court must first decide whether a qualified privilege exists or should exist before deciding how to apply it to a particular case." 821 F.2d at 955. It reasoned that "although the concept of the qualified privilege permits courts to uphold or reject privilege claims in light of the particulars of an individual case, the decision to recognize a qualified privilege must still follow from a more broad-based view of how the privilege will work in general." *Id.*

Concerning the asserted privilege, the Third Circuit held:

> [W]e do not believe the district court's efforts merely to distinguish *Gillock* paid proper respect to its significance. *Gillock's* reasoning undercuts the weight we may accord interests of comity and federalism, and *Gillock's* practical impact undermines the extent to which recognition of a speech or debate privilege for state legislators may realistically further the interests that the privilege has traditionally safeguarded. To analyze the Legislators' claim, we must evaluate the specific reasons for and against a qualified speech or debate privilege in light of the theoretical and practical limitations imposed by *Gillock.*

821 F.2d at 955–956. Following *Gillock*, the court found that "[f]ederalism and comity do not raise the same concerns because the Supremacy Clause sanctions 'interference' with state legislatures by the federal executive and judiciary so long as they pursue legitimate federal aims." 821 F.2d at 956. The court also observed that because *Gillock* allowed federal prosecution of state legislators based upon evidence of their legislative actions, a qualified privilege from disclosure of state legislative documents and communications could not protect state legislators from harassment and intimidation as to their legislative actions in such a prosecution, and thus "cannot serve a purpose for state legislators similar to that which lies at the core of the privilege for members of Congress." 821 F.2d at 956.

The court determined that the burden of complying with a subpoena seeking information from an ongoing legislative investigation was one which should be seriously considered, but it did not believe that "a state legislator's interest in avoiding the burdens of compliance with a subpoena is alone sufficient to justify creation of a speech or debate privilege." 821 F.2d at 957. It noted that that interest is sufficiently protected by Fed. R.Crim.P. 17, which allows for protective orders to prevent undue burden or disruption of legislative activities while still accommodating the need for the information of the party who issued the subpoena. *Id.* Of course, the same is true of Fed.R.Civ.P. 26(c).

The court found, however, that a "state legislator's need for confidentiality is more troublesome." 821 F.2d at 957. The court recognized there may be a "more narrowly tailored privilege for confidential communications," *Id.*, at 958. Such a privilege, said the court, would be needed "for a full, frank exchange of ideas" similar to the need for confidentiality "between judges, between executive officials, and between the President and his aides." *Id.* In so finding, the court relied upon *United States v. Nixon*, 418 U.S. 683, 708, 94 S.Ct. 3090, 3107–08, 41 L.Ed.2d 1039 (1974), which found a need for confidentiality between the President and those who assist him, *United States v. Weber Aircraft*, 465 U.S. 792, 802, 104 S.Ct. 1488, 1494, 79 L.Ed.2d 814 (1984), recognizing a privilege for executive officials "to ensure frank and

open discussion and hence efficient governmental operations," and from this circuit in the *Hastings* case, which found a similar privilege for communications between a district judge and his law clerks. *Id.*

But the Third Circuit held that a confidentiality privilege must be narrowly drawn. Quoting *Trammel*, it found that "courts have taken pains to insure that the privilege applies only 'to the very limited extent' that the 'public good' in confidentiality transcends the value of 'utilizing all rational means for ascertaining truth.'" *Id.* As to officials lesser than the President, the court pointed out that this circuit in the *Hastings* case limited a privilege to communications involving judicial business such as framing and researching opinions, orders, and rulings. *Id.*, at 958.

Thus the Third Circuit held: "we do not believe that the needs of state legislators for confidentiality justify the creation of a qualified privilege for the full range of legislative activities normally protected by the Speech or Debate Clause." *Id.* Even as to confidential communications, the court observed that "many communications actually made in confidence have only a limited need for confidentiality." *Id.* It said:

> For this reason, our prior decisions have recognized that confidentiality does not lie at the root of the concerns motivating a privilege for all legislative speech or debate. The speech or debate privilege is at its core a "use privilege" not a privilege of nondisclosure.

*Id.* (citations omitted). Accordingly, the court rejected the privilege in the context presented.

Nonetheless, the court held that it did not "preclude the possibility of a more narrowly tailored privilege for confidential deliberative communications." *Id.* The court turned, therefore, to the case law which recognizes a "deliberative process" for executive officials. *Id.*, at 959. The court held that such a privilege would be "limited to communications involving opinions, recommendations or advice about legislative decisions." *Id.* The court held that normally, factual summaries prepared for informational purposes will not be protected even if they are part of an investigative record. *Id.* It reasoned that

factual material contained even in advisory opinions (which themselves might be confidential recommendations), if severable, would not be protected. *Id.* Finally, the court held that "the party seeking disclosure may overcome the privilege by showing a sufficient need for the material in the context of the facts or the nature of the case." *Id.*

In the *Hastings* case decided by this circuit, law clerks to a district judge asserted a privilege against disclosure of their communications with an Article III federal judge akin to the Speech or Debate Privilege and that afforded to Presidential communications. 783 F.2d at 1518. While the court found the question not ripe as to the deponents, it was ripe as to documents sought. As to these, the court concluded that there exists a qualified privilege protecting confidential communications between federal judges and their staffs in the performance of their judicial duties. *Id.* at 1520. It limited the privilege, however, to "communications among judges and others relating to official judicial business such as, for example, the framing and researching of opinion, orders, and rulings." *Id.* The court noted that some information, such as with whom the district judge met or the time of the meeting, would not necessarily be privileged because such information "would not involve the substance of the communications between them." *Id.*

This circuit further held in the *Hastings* case that a judicial privilege of confidential communications is only qualified, not absolute, and that it may be overcome in a proper case. *Id.* at 1521. The court found that a judicial privilege must be harmonized with the principle that "the public ... has a right to every man's evidence." *Id.*, quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). The privilege, the court said, may be overcome by a showing that the need is greater than the interests protected by the privilege. *Id.* at 1522. Factors to consider when evaluating need are "the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means." *Id.* at 1522.

Applying this standard to the inquiry in question, the court found the privilege overcome. It reasoned: "The Committee could hardly undertake a full and complete investigation of a complaint growing out of charges that a judge's ruling was influenced by bribery without questioning the judge's staff about the in-chambers communications that led to the particular ruling." *Id.* The court noted, however, that since the Committee investigating the matter was composed of judges, disclosure to the Committee was little more than the disclosure which would occur to a district judge *ex parte. Id.*, p. 1524.

Florida law itself provides little guidance to this court as to whether this court should recognize the privilege asserted.[2] Florida does not have evidentiary privilege or "speech or debate" clause in its state constitution for state legislators. Of the 48 states in 1951, only Florida had no state constitutional legislative privilege. *Tenney v. Brandhove,* 341 U.S. at 375 n. 5, 71 S.Ct. at 788 n. 5. As of 1981, 43 states had speech or debate clauses, and 5 exempted legislative members from arrest during a legislative session; Florida and North Carolina legislators alone had no specific constitutional protection. *Girardeau v. State,* 403 So.2d 513, 515 n. 3 (Fla. 1st DCA), *review dismissed,* 408 So.2d 1093 (Fla.1981).

The Florida Legislature asserted at oral argument that a number of circuit court decisions have, without significant opinion, sustained the privilege sought here, but except for the *Girardeau* case, this court does not have any reasoned opinion from any Florida court to that effect. *Girardeau* is quite similar in both context and analysis to that found in *Gillock, In re Grand Jury,* and *Hastings.*

In the *Girardeau* case, the issue was whether a circuit court could compel a state legislator to answer grand jury questions concerning his legislative investigation into the death of a state prisoner. The court held that it would not decide whether such a privilege generally exists, finding that "[t]here is every reason to believe that all due deference will and should be extended by the judicial branch to any properly asserted legislative claim of privilege, and it is imperative that it be kept in mind that such claims of privilege are supported by substantial authority." 403 So.2d at 516. The *Girardeau* case held that if such a privilege exists in Florida, it does not exist where the matter to be disclosed is relevant to a criminal proceeding. 403 So.2d at 518. Thus, its holding is much the same as that in *In re Grand Jury* and *Gillock,* both of which were criminal proceedings, and *Hastings,* which concerned the impeachable offense of bribery.

The *Girardeau* court, however, also provided guidance as to the factors that are relevant to the question of the existence of a legislative privilege. Its discussion is much like that in *In re Grand Jury.* The court first noted that pursuant to Fla.Stat. § 90.501 (of the Florida Evidence Code), no evidentiary privilege exists in Florida unless specified in the Code, other state statute, or the state or federal constitutions. 403 So.2d at 514. The court said that such a state legislative privilege is not found in any of these places. It also noted that no statute or rule provides for confidential hearings or investigations by the legislature. 403 So.2d at 517 n. 6. The court said that although it should be cautious about privileges, it was "not, however, insensitive to the need for freedom of communication, which often means confidentiality and freedom from compelled disclosure, such as it is accorded to judicial deliberations." *Id.*, n. 6. Finally, the court quoted *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972), which concerned the federal Speech or Debate Clause, that:

> The heart of the Clause is the speech or debate in either house. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which members participate in committee and house proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places

---

**2.** *Gillock* advises that Florida law is relevant to the inquiry. But since the privilege asserted is a federal one which should be uniform in all of the states, Florida law cannot be dispositive of the issue.

within the jurisdiction of either House. As the court of appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either house, but only "when necessary to prevent indirect impairment of such deliberations."
403 So.2d at 518 n. 8 (citation omitted).

Two district court decisions which this court's research has discovered should also be mentioned. In *United States v. Irvin*, 127 F.R.D. 169 (C.D.Calif.1989), discovery was sought as to communications occurring between the Los Angeles County Board of Supervisors and their staff members during non-public meetings prior to adoption of a redistricting plan. The suit was brought under the Voting Rights Act, 42 U.S.C. § 1973, et seq. A magistrate judge ruled that Los Angeles County had a qualified federal privilege protecting these deliberations of local legislators. It was found that the privilege applied to pre-decisional, non-factual, non-public deliberations. 127 F.R.D. at 172. In so finding, the court relied upon *In re Grand Jury*. *Id*. The court found, however, that the privilege in that case had to yield to the need for disclosure. *Id.*, at 173–174.

The second case, *Corporacion Insular de Seguros v. Garcia*, 709 F.Supp. 288 (D.Puerto Rico 1989), *appeal dismissed*, 876 F.2d 254 (1st Cir.1989), rejected the reasoning of *In re Grand Jury*, finding instead that if a privilege is to be afforded, the purpose of the privilege is not to protect confidentiality of communications, but to protect state legislators and their staff members from personally having to respond to civil process. The court determined that a "deliberative process" privilege was inapposite for that purpose. It held it would extend a federal common law privilege to documents to the extent those documents fell under the "umbrella" of the protections afforded by the Speech or Debate Clause. 709 F.Supp. at 295. While some of the documents were found to be within that privilege, it found that the documents were not protected against disclosure because it held that "the legislative privilege is one of non-evidentiary use against a legislator not

one of non-disclosure" and neither the discovery sought nor the nature of the suit entailed direct liability of the person from whom the documents were sought. *Id.*, at 296–297.

Finally, the court in *Corporacion Insular de Seguros v. Garcia* held that the legislative staff member himself could not be subjected to a deposition. *Id.*, at 297. In so ruling, the court found that the Speech or Debate Clause protects a legislator from "any litigatory activities that create distractions or force legislators to divert their time, energy and attention from their legislative tasks." *Id*.

Plaintiffs cited several cases in oral argument for the proposition that the immunity conferred by *Tenney* necessarily includes a privilege against testimonial disclosures, but the cases cited are not persuasive. A case of this sort is *Searingtown Corp. v. The Incorporated Village of North Hills*, 575 F.Supp. 1295 (E.D.N.Y.1981). There, unlike the case at bar, suit was brought against the individual local legislators, and the court found that the *Tenney* immunity was applicable. 575 F.Supp. at 1298. Having so found, it reasoned that a federal common law testimonial privilege against inquiring into the motivation of the local legislators in the performance of their legislative duties should apply. *Id.*, 1298–1299. To like effect is *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292 (D.Md.1992). At issue was the immunity of legislators from suit. Similarly, *Schlitz v. Com. of Va.*, 854 F.2d 43 (4th Cir.1988)[3] also involved a question of legislative immunity from suit. The same is true of *Orange v. County of Suffolk*, 855 F.Supp. 620 (E.D.N.Y.1994).

From these cases, the following observations are made. First, the Speech or Debate Clause does not apply at all to state and local legislators. Thus, this court should follow the path which was blazed in *Gillock* to determine whether a federal common law privilege for state legislators exists, rather than look to precedent founded entirely upon the full scope of the Speech or Debate Clause. Thus, the reasoning of *Corporacion*

---

**3.** The circuit declined to extend the reasoning of this case, providing immunity to state legislators, to the legislative acts of a municipality. *Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir.1995) (holding that *Schlitz* was "overruled" to that extent).

*Insular de Seguros v. Garcia* is not persuasive.

Second, the last three cases relied upon by the Florida Legislature provide a basis to conclude that legislators and some of their staff members may be immune to civil process in a suit directly against them. But that is an immunity flowing from the absolute immunity from suit conferred by *Tenney*. It is not an evidentiary privilege. Moreover, that is not the case at bar, since Plaintiffs do not sue legislators.

Next, the separation of powers interest at stake with respect to the federal Speech or Debate Clause is not at issue in this case. That is purely an issue of the relationship of the federal judiciary to Congress, and does not arise here. *Gillock* and *In re Grand Jury* have made it clear that the Supremacy Clause overrides any notion that this interest applies. That is particularly true in this case, since at stake is the enforcement of a federal statute against a state agency which has accepted federal Medicaid funds.

Further, *Gillock* and *In re Grand Jury* arose in the context of federal criminal proceedings, and the *Hastings* case involved charges of bribery against an Article III judge. While assuredly there is a significant federal interest at stake in the enforcement of the Medicaid Act, it is different than the federal interest at stake in those cases.

 Finally it is observed that a portion of the reasoning of *In re Grand Jury* does not apply in this case. *In re Grand Jury* found that the threat of intimidation of state legislators by having to respond in discovery to a federal grand jury subpoena was essentially a moot interest because the underlying information, state legislative acts, would nonetheless be useable as evidence against a state legislator in a federal criminal prosecution after *Gillock*. That would not occur here. *Tenney* still precludes any sort of private suit against state legislators which might arise from alleged violations of the Medicaid Act.

There probably is a qualified state legislative evidentiary privilege which may be applicable in this case. *In re Grand Jury* pro-

vides the most persuasive authority for the scope of the privilege. The court is persuaded to follow *In re Grand Jury* in part because the scope of the privilege articulated there is consistent with the scope of the federal judicial privilege recognized by the *Hastings* case. In particular, *Hastings* found that law clerks to federal judges have no absolute privilege to refuse to be deposed as to matters arising within their official duties. The potential from distraction from their important judicial duties is exactly the same as it is for state legislative staff members. Since the federal Speech or Debate Clause does not apply at all to a state legislator, it would make more sense to ground a federal common law privilege upon the need to foster frank discussions in confidence with the elected official than to ground it upon the broader interest governed by the Speech or Debate Clause as occurred in *Corporacion Insular de Seguros v. Garcia.*

Thus, if any privilege should be recognized in this case, it should be a "deliberative process privilege." The privilege would not be as extensive as that provided for Congress by the Speech or Debate Clause. Since the purpose of the privilege, as it was in the *Hastings* case, is to protect the confidentiality of communications with the office-holder involving the discharge of his or her office, the privilege must be limited to communications between an elected legislative member and his or her personal staff members involving opinions, recommendations or advice about legislative decisions. The court can see less reason for a "deliberative process" privilege as to legislative employees who provide information to legislators collectively, as, for example, technical employees of a standing committee, who do not advise a particular legislator as his or her personal staff.[4]

Factual matter collected for the information and use of legislators should not be privileged, even if collected and communicated by a personal staff member. Factual summaries in an advisory communication, if severable from confidential portions, should also not be privileged. Further, information which does not reveal the content of commu-

---

4. The analogy to the law clerks in the *Hastings* case is apt.

nications with a legislator should not be privileged.

Finally, even if the information sought is privileged, the privilege may not be applicable in this case. Plaintiffs have made a persuasive argument that the subject matter of this case, as defined by federal law, is in part the legislative process itself, which directly affects the "correctness" of the rates to provide reasonable reimbursement. That feature of the claim at issue makes this case unique. Additionally, it may be that even if a privilege as to particular questions is to be recognized, it may be overcome by a showing of need following the standards set forth in the *Hastings* case.

These rulings must be tentative at this time in light of the admonition of *Hastings*. A definitive determination of the nature of a privilege which should be recognized in this case and the application of such a privilege in a specific context is not ripe for the court's consideration. Nonetheless, is clear that these deponents do not have a privilege or an immunity from attendance at a deposition.

Accordingly it is ORDERED that the motion of the Florida Legislature for a protective order, doc. 9, is DENIED.

DONE AND ORDERED.