NISHIKA, LTD., et al., Plaintiffs,

v.

FUJI PHOTO FILM CO., LTD., et al., Defendants.

No. CV–S–96–962–HDM(RLH).

United States District Court, D. Nevada.

June 2, 1998.

**466**

## ORDER

HUNT, United States Magistrate Judge.

(Motion to Compel—# 108)

Before the Court is **Defendants' Motion to Compel the Production of Documents** (# 108, filed April 7, 1998). Plaintiffs' ... Opposition ... (# 111) was filed April 14, 1998. Defendants then filed a Declaration of John E. Tardera (# 122) and its Reply ... (# 123) on April 20, 1998.

Defendants seek the production of a letter, dated September 10, 1992, between two attorneys in Plaintiffs' law firm. At least, Defendants contend, the Court should examine the letter, *in camera,* to determine whether it should be disclosed.

The relevance of the letter is argued based upon the timing and circumstances of its writing. This case is based upon a claim that the parties entered into a licensing agreement to market certain camera products. It appears that negotiations had been conducted for some months prior to September 1992. Nishika claims that a basic agreement was reached. On September 4, 1992, Fuji faxed what it calls a skeletal proposal, and Nishika calls a counter-proposal. On September 8, 1992, Nishika replied with what Fuji characterizes as a purported "acceptance" which included two additional terms. Nishika describes this document as an acceptance of the counterproposal.

The letter in question is dated September 10, 1992. According to Plaintiff Nishika, the letter is a memorialization of a conversation Nishika had with its contact attorney, Norman Ankers, at the law firm it was using, Honigman Miller Schwartz and Cohn. Ac-cording to Nishika, Mr. Ankers, who is a litigation attorney and not a transactional attorney, wrote the letter to a transactional attorney in his law firm, John Friedl, describing what Nishika had told him regarding the drafting of the agreement. Nineteen days later, on September 29, 1992, Nishika faxed a twelve-page draft of an agreement which was never executed. Plaintiff now claims damages for the breach of that agreement.

Nishika contends the letter is protected by the attorney-client privilege because it contains its communications to its attorneys and is a letter between two members of its law firm to relay the substance of that communication for the purposes of carrying out it instructions.

Fuji contends that if it just discusses facts, it is not privileged, and, if it contains advice, that portion can be redacted. It requests an *in camera* review to determine if disclosure of all or part of it is required.

Numerous authorities were cited by both parties, only a few of which this Court finds helpful or persuasive.

. . . .

## 1. Attorney–Client Privilege

The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications. *In re Grand Jury Subpoenas (Hirsch),* 803 F.2d [493] at 496. To meet this burden, a party must demonstrate that its documents adhere to the essential elements of the attorney-client privilege adopted by this court. *[In re] Fischel,* 557 F.2d 209 (9th Cir.1986) at 211. [Footnote 2]

[Footnote 2] The attorney-client privilege may be divided into eight essential elements: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived." *Fischel,* 557 F.2d at 211 (quoting

8 John H. Wigmore, Evidence § 2292, at 554 (McNaughton Rev.1961)).

*In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir.1992).

> In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold.

*Id.*

This *prima facie* showing is satisfied when the party has, by producing a privilege "log identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Id.* at 1071.

The attorney-client privilege is designed to protect confidential disclosure made by a client to an attorney for the purpose of obtaining legal advice. *Id.* at 1070.

. . . .

In *Clark v. District Court*, 101 Nev. 58, 692 P.2d 512 (1985), an ex-wife of a decedent sued on a claim that the decedent promised to leave her one million dollars in his will. She tried to obtain production of all wills, codicils to wills, or drafts made to wills, together with drafts of divorce settlement agreements, . from the decedent's lawyer. The Nevada Supreme Court refused her request, explaining:

> "In the complicated affairs and relations of life, the counsel and assistance of those learned in the law often becomes necessary, and to obtain it men are frequently forced to make disclosure which their welfare, and sometimes their lives, make it necessary to be kept secret. Hence, for the benefit and protection of the client, the law places the seal of secrecy upon all communications made to the attorney in the course of his professional employment, and the courts are expressly prohibited from examining him as a witness upon any facts which may have come to his knowl-

edge through the medium of such employment."

*Id.*, 692 P.2d at 514.

██ Nishika has met its *prima facie* burden by producing a log essentially describing the information required. The letter is between two members of a law firm. It was written to convey information which one attorney received from the client, to another attorney in the law firm, for the purposes of preparing legal documents (*i.e.*, providing legal advice or services).

## 2. *In Camera* Review

██ *In Camera* review is not generally favored. *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 252 (D.C.Cir.1993). In *United States v. Zolin*, 491 U.S. 554, 571–72, 109 S.Ct. 2619, 2630–31, 105 L.Ed.2d 469 (1989), the Supreme court held that a district court may, in some circumstances require an *in camera* review of documents. However, it held that the court should not conduct such a review solely because a party begs it to do so. *Id.* at 571, 109 S.Ct. at 2630. There must first be a sufficient evidentiary showing which creates a legitimate issue as to the application of the privilege asserted. *Id.*

*In camera* review is appropriate only after the party seeking it has submitted sufficient affidavits and other evidence to the extent it can. *Wiener v. Federal Bureau of Investigation*, 943 F.2d 972, 979 (9th Cir.1991).

In an analysis of the *Zolin* decision, the Ninth Circuit has stated that to "empower the district court to review the disputed materials *in camera*," the party seeking the review must make a factual showing sufficient to support a reasonable, good faith belief that the review will reveal evidence that is not privileged. *Id.* at 1075.

██ Defendant has made a sufficient showing that the information is likely relevant, considering the timing of the letter and its purported subject matter. However, it is pure speculation that the letter contains anything but directions and requests regarding counsel's preparation of a legal document. That is the seeking of legal advice and services.

Notwithstanding a prior suggestion, by Plaintiffs' counsel, that the letter be submitted for an *in camera* inspection, Defendants do not have a right to such a review without meeting its evidentiary burden. They have not done so. The motion will be denied.

The reasoning and justification for this Court's action is most eloquently stated in *Pearse v. Pearse,* 1 DeG. & Son. 28–9, 16 L.J.Ch. 153 (1846), as follows:

> Truth, like all other good things, may be loved unwisely—may be pursued too keenly—may cost too much. And, surely the meanness and the mischief of prying into a man's confidential consultations with his legal advisor, the general evil of infusing reserve and dissimulation, uneasiness, and suspicion and fear, into those communications which must take place, and which unless a condition of perfect security, must take place uselessly or worse, are too great a price to pay for the truth itself.

"*Upjohn [v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)] stands for the proposition that the advantages of preserving the privilege outweigh the inescapable disadvantages of the resultant secrecy." *Admiral Ins. v. U.S. Dist. Court for the Dist. of Ariz.,* 881 F.2d 1486, 1492 (9th Cir. 1989).

Accordingly, for the reasons stated,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel the Production of Documents (# 108) is **denied.**