NEWPORT PACIFIC INC., a California Corporation, et al., Plaintiff,

v.

COUNTY OF SAN DIEGO, a political subdivision of the state of California, et al., Defendants.

No. CIV. 99–2496–JM(LSP).

United States District Court, S.D. California.

June 18, 2001.

Tracy R. Richmond, Donald Wayne Brechtel, Worden, Williams, Richmond, Brechtel and Gibbs, Solana Beach, CA, for plaintiffs.

Margaret L. Coates, County of San Diego Office of County Counsel, William H. Songer, R. Mark Beesley, San Diego, CA, for defendants.

Mark K. Stender, Higgs, Fletcher and Mack, San Diego, CA, Kenneth H. Moreno, Murchison and Cumming, San Diego, CA, for Whispering Palms Community Council.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL (50–1); DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER (52–1)**

PAPAS, United States Magistrate Judge.

### INTRODUCTION

This action involves the application of land use and environmental laws to an assisted living development proposal known as Palma de la Reina. Plaintiffs, Newport Pacific Inc., et al., ("Newport"), challenge Defendants', the San Diego County Board of Supervisors, et al., ("the Board"), failure on August 11, 1999, to uphold the decision of its Planning Commission to approve a Major Use Permit for the Palma de la Reina project. Plaintiffs allege the Planning Commission application complied with all applicable land use and environmental laws. However, instead of affirming the permit approved by the Planning

Commission, the Board voted to require an Environmental Impact Report ("EIR"). Plaintiffs contend Defendants deviated from the standard procedures for land use decisions violating the Federal Fair Housing Act and the California Fair Housing Act and breached an agreement with Plaintiffs regarding the processing of the Application. As a result of the foregoing, Plaintiffs claim Defendants violated Plaintiffs' civil rights, denied them equal protection and due process of law.

Plaintiffs seek injunctive relief: (1) setting aside all actions taken by the Board regarding the permit application for the project on August 11, 1999; (2) enjoining Defendants from any further discriminatory application of land use and environmental laws to the project application, including an order enjoining enforcement of their decision to require an EIR; and (3) directing Defendants to issue the Major Use Permit approved by the Planning Commission. Plaintiffs also seek compensatory and punitive damages, costs and attorneys' fees.

The parties have filed contemporaneous motions. The Court addresses first, Plaintiffs' Motion to Compel production of documents and second, Defendants' Motion for Protective Order prohibiting Plaintiffs from deposing two legislative aides to the Board. The Court has reviewed the Motions, the Oppositions and all the exhibits filed by the parties in the case. Based upon the papers submitted by the parties, for the reasons set forth below, Plaintiffs' Motion to Compel is GRANTED in part and DENIED in part and Defendants' Motion for Protective Order is DENIED.

## DISCUSSION

### A. Plaintiffs' Motion to Compel

On March 16, 2001, in response to document production requests from Plaintiffs, County Counsel for Defendants, the County of San Diego ("the County"), provided Plaintiffs a privilege log identifying seventeen doc-

uments under various claims of privilege.[1] (Decl. of William Songer Exh. I). Thereafter, counsel for the parties met and conferred several times regarding the documents identified in the privilege log. Followings these meet and confers, Defendants agreed to turn over four documents to which a privilege had been asserted.

Plaintiffs request the Court conduct an in camera review of the remaining documents to determine if they are subject to production. Defendants oppose on the basis that the documents listed in the privilege log are, on their face, protected by the attorney-client privilege and the work-product doctrine.

### (a) Attorney–Client Privilege

 Federal law governs attorney client privilege in nondiversity actions. Fed. R.Evid. 501. The purpose of the attorney-client privilege is to encourage candid communications between client and counsel. See *Upjohn Company v. United States,* 449 U.S. 383, 390–91, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The attorney-client privilege attaches to "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams,* 905 F.2d 1276, 1283 (9th Cir.1990), overruled in part on other grounds by *United States v. Jose,* 131 F.3d 1325, 1329 (9th Cir.1997). The Supreme Court has explained, "[t]he lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reason for seeking representation if the professional mission is to be carried out." *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). In that regard, the privilege protects not only the giving of professional advice by the lawyer, but also the giving of information to the lawyer to enable him to give sound and informed advice. *See Id.*

 There is no longer any question that the attorney-client privilege may be assert-

1. The Privilege Log lists the date the document was created, a document description, the author's name, the recipient's name, and the privilege claimed. However, it should be noted that the document description is extremely brief and in most cases offers only a generic, one-word description.

ed by a corporation or other organization. *See generally* Edna Selan Epstein, The Attorney Client Privilege and the Work–Product Doctrine, 78, (American Bar Association; 3ed., 1997).[2] In *Upjohn*, the United States Supreme Court found that communications between the corporation's employees and corporate counsel were protected from compelled disclosure. *Upjohn*, 449 U.S. 383, 394, 101 S.Ct. 677, 66 L.Ed.2d 584. In so finding, the *Upjohn* court reasoned that "[m]iddle-level—and indeed low-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Upjohn*, 449 U.S. 383, 392, 101 S.Ct. 677, 66 L.Ed.2d 584. The holding in *Upjohn*, however, is not so sweeping as to protect any and all communications of lower employees with in-house counsel "which would expand the privilege far beyond its bounds and unnecessarily frustrate the efforts of others to discover corporate activity." *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 654 F.Supp. 1334, 1365 (D.D.C.1986). The issue therefore, lies in discerning which individuals within the organization can speak on behalf of the organization to the lawyer so that the privilege applies to their communication. *See* Epstein, *supra*, at 74.

Prior to *Upjohn*, federal courts commonly employed two schools of thought in addressing this issue. First, the "control group test," reflected the approach that "only the senior management, guiding and integrating the several operations,...can be said to possess an identity analogous to the corporation as a whole." *Upjohn*, at 389, 101 S.Ct. 677. In articulating the "control group test," one district court found "that if the employee making the communication, of whatever rank he may be, is in a position to control or even take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney,...then, in

effect, he is (or personifies) the corporation when he makes his disclosure to the lawyer and the privilege would apply." *Upjohn*, at 388, 101 S.Ct. 677, *citing Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483, 485 (E.D.Pa.), petition for writ of mandamus and prohibition denied sub nom. *General Electric Co. v. Kirkpatrick*, 312 F.2d 742 (C.A.3 1962), cert. denied, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963).

The second theory commonly employed by federal courts focused more on the subject matter of the communication. Specifically, in applying the "subject matter test," the attorney-client privilege was applicable where, (1) the person making the communication to the lawyer was in the employ of the corporation, (2) the communication was made at the direction of a corporate superior, and (3) the communication was within the scope of the employees duties. *See* Epstein, *supra*, at 79, *citing Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491 (7th Cir.1970), aff'd. by equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971) ("An employee of a corporation though not a member of its control group, is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the employee makes the communication at the direction of his superior in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.")

While the *Upjohn* Court expressly rejected the "control-group test" as being too limited, the Court declined to "lay down a broad rule or series of rules to govern all conceivable future questions in this area." *Upjohn*, at 386, 101 S.Ct. 677. The *Upjohn* Court did however find the attorney-client privilege was applicable to communications "...not available from upper-echelon management, [that were] needed to supply a basis for legal advice...concerning matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently

**2.** "For purposes of the attorney-client privilege, an agency is a 'client' under federal law." *Galarza v. United States*, 179 F.R.D. 291, 295 (S.D.Cal.1998) *citing Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1089, 1092 (9th Cir.1997).

aware that they were being questioned in order that the corporation could obtain legal advice," thereby affirming the "subject matter" approach. *Id.* at 394, 101 S.Ct. 677. Consistent with *Upjohn*, the Ninth Circuit has extended the attorney-client privilege "to communications between corporate employees, and counsel made at the direction of corporate superiors in order to secure legal advice." *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir.1996).

### (b) Work–Product Doctrine

■ The work-product doctrine is a qualified immunity which protects form discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. Fed.R.Civ.P. 26(b)(3). The underlying purpose of this doctrine is to discourage counsel for one side from taking advantage of the trial preparation undertaken by opposing counsel, and to encourage both sides to conduct thorough and independent investigations. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In determining whether documents were prepared in anticipation of litigation, courts should consider whether such documents "would not have been generated but for the pendency or imminence of litigation." *Griffith v. Davis*, 161 F.R.D. 687, 698–99 (C.D.Cal.1995), *quoting Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D.Cal. 1987). The party seeking to invoke the work-product doctrine bears the burden of establishing that any documents claimed as work product were prepared in anticipation of litigation. *See United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D.Cal. 1985).

Each item of the privilege log is analyzed in light of the above authority.

### (1) August 11, 1999 Notes Prepared by Board Staff

The first item includes notes prepared by Board staff ("Notes") for the Board's use at the August 11, 1999 hearing that is the focus of this litigation. Plaintiffs maintains that it is Defendants burden to demonstrate the applicability of the attorney-client privilege, and that there is no indication that the Notes reflect a confidential communication between an attorney and a client. (Mot. at 6). Defendants argue the Notes are not traditional attorney-client privilege, but that the Notes fall squarely within the deliberative process privilege. The assertion of that privilege is raised by Defendants in their contemporaneously filed Motion for Protective Order. Therefore, the applicability of that privilege will be decided by the Court in its assessment of the Motion for Protective Order.

### (2) July 26, 1999 Letter from William Stocks to County Counsel

Defendants indicate William Stocks ("Stocks") is the Project Manager for the County Department of Planning and Land Use ("DPLU") and was responsible for processing Plaintiffs' application. Defendants further indicate that by this correspondence, Stocks was communicating with County Counsel in connection with a rough "Draft Form of Decision" regarding the project for the then-upcoming Board Meeting on August 11, 1999. (Opp'n. at 4). Defendants assert that the draft was prepared in confidence at County Counsel's request in order to be able to properly advise the client, the Board, at a Board Meeting. (Opp'n. at 4).

Plaintiffs claim Defendants have failed to satisfy their burden that the attorney-client privilege applies to this document. Specifically, Plaintiffs contend that there is no indication that Stocks prepared the document at the direction of his superior, that he intended the letter to be confidential and for the purpose of obtaining legal advice, or that the privilege was not waived by revealing the document to third parties. (Mot. at 7). In support of this argument, Plaintiffs cite *Chen, supra*, where the Ninth Circuit found "the attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors". *Chen*, 99 F.3d at 1502

Defendants allege Plaintiffs' reliance on *Chen* is misplaced in that *Chen* concerned counsel's communication with lower ranking, non-management employees. (Opp'n. at 4). Defendants say the case at bar is distinguishable from *Chen* as the sole communications listed in the privilege log concern communi-

cations between County Counsel and those employed who are the "superiors." (Opp'n. at 4).

■ The burden of establishing that the attorney-client privilege applies rests upon the party asserting the privilege. *See United States v. Zolin*, 809 F.2d 1411, 1414 (9th Cir.1987), vacated in part on other grounds, 842 F.2d 1135 (9th Cir.1987) (en banc), aff'd. in part and vacated in part on other grounds, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). As a result, Defendants bear the burden of establishing Stocks' status as a "superior," operating at County Counsel's request or in the alternative, that the communication was made at the direction of corporate superiors in order to secure legal advice from counsel. *See Upjohn*, 449 U.S. at 390–94, 101 S.Ct. 677, ("...a corporation can only act through its officers, agents, and employees. Consequently, communications between corporate counsel and company personnel are privileged so long as they concern matters within the scope of the employees' corporate duties.")

■ Here, the Court is satisfied that Defendants have met their burden. Specifically, as the Project Manager responsible for processing Plaintiffs' application, if Stocks is not considered a "superior" for purposes of the attorney-client privilege, in processing Plaintiffs' application, presumably Stocks was acting within the scope of his employment. Defendants contend, through this letter, Stocks was communicating with County Counsel in connection with a "Draft Form of Decision" regarding the project for the then-upcoming Board Meeting on August 11, 1999. (Opp'n. at 4). Defendants assert the draft was prepared in confidence at County Counsel's request in order to be able to advise the Board, at the upcoming Board Meeting. (Opp'n. at 4). While a party may waive the attorney-client privilege by voluntarily disclosing the content of the privileged attorney-client communication to a third party, here, there is no indication that copies of this letter have been provided to anyone outside of County Counsel. *See Weil v. Investment/Indicators Research and Mgmt.*, 647 F.2d 18, 24 (9th Cir.1981). As such, the letter contains attorney-client privileged information.

As an alternative to compelling production, Plaintiffs request the Court conduct an in camera review of the document to assess the validity of the asserted privilege. In *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), the Supreme Court held that a district court may in some circumstances require an in camera review of documents. *Nishika v. Fuji Photo Film Co.*, 181 F.R.D. 465, 466 (D.Nev.1998), *citing Zolin*, 491 U.S. 554, 571–72, 109 S.Ct. 2619, 105 L.Ed.2d 469 ("...[i]n camera inspection is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure.") *citing* Fried, Too High a Price for Truth: The Exception to the Attorney–Client Privilege for Contemplated Crimes and Frauds, 64 N.C.L.Rev. 443, 467 (1986). However, in camera review is generally disfavored and "a court should not conduct such a review solely because a party begs it to do so." *Nishika*, 181 F.R.D. 465, 466 (D.Nev. 1998) *citing PHE Inc. v. Department of Justice*, 983 F.2d 248, 252 (D.C.Cir.1993). In an analysis of the *Zolin* decision, the Ninth Circuit found that to " 'empower the district court to review the disputed materials in camera,' the party seeking the review must make a factual showing sufficient to support a reasonable good faith belief that the review will reveal evidence that is not privileged." *Id.* In this instance, Plaintiffs have made no such factual showing. The Court therefore DENIES Plaintiffs' Motion to Compel with regard to the letter and declines an in camera review.

*(3) Closed Session Packet Information Dated February 16, 1999 and August 10, 1999*

Plaintiffs argue that these two items, which may consist of a variety of documents, "may not be protected in whole or in part by the attorney-client privilege." (Mot. at 7). Specifically, Plaintiffs argue that to the extent that any of the documents are accompanied by preexisting documents, or obtained from third parties, or documents containing just factual information, the documents should be turned over to Plaintiffs. (Mot. at

7). Defendants maintain the closed session is where the Board makes policy and strategy choices on litigation and the packet information contains County Counsels' analysis of issues for presentation to the Board at closed session, which is the hallmark of the attorney-client privilege and work-product doctrine. (Opp'n at 6). Defendants further allege that Plaintiffs' suggestion that pre-existing documents might be attached to those materials is wholly unwarranted. (*Id.*).

■ To the extent that the information at issue here is County Counsel's analysis of issues for presentation to the Board at closed session where the Board makes policy and strategy choices on litigation, the information is attorney work-product, and therefore protected from disclosure. The Court sees no reason to question Defendants' assertion of that privilege and is satisfied that the information is work-product. As a result, Plaintiffs' Motion to Compel is DENIED with regard to the Closed Session Packet Information and the Court declines to conduct an in camera review.

### (4) 7 Disks and/or E-mails To/From County Counsel, Board and Staff

Here, Plaintiffs ask the Court to ascertain whether these documents were sent in confidence from the Board, or by its staff at the Board's direction, and that the person sending the e-mail was aware that the information was being furnished to enable County Counsel to provide legal advice. (Mot. at 7). Plaintiffs also ask the Court to determine whether any of the documents might have been distributed to third parties, as this is not indicated in the privilege log.

Defendants do not address these disks and/or e-mails in the Opposition despite the fact that they are listed on the privilege log as attorney-client communication. Because Defendants did not address these documents, the Court concludes Defendants do not oppose production of said disks and/or e-mails. The Court therefore Grants Plaintiffs' Motion to Compel and Orders production of

these documents to the extent that they are not individually addressed below.

### (5) Various E-mails from County Counsel to the Board

Defendants list several e-mails on the privilege log generated by County Counsel including (i) E-mail from Counsel to John Weil, Supervisor Slater's Legislative Aide; (ii) E-mail from County Counsel to Diane Bardsley and John Sansone; (iii) January 18, 2000 E-mail from County Counsel to Patricia Boaz; (iv) March 21, 2000 E-mail from County Counsel to Patricia Boaz; and (v) March 30, 2000 E-mail from County Counsel to Patricia Boaz. With regard to the above-enumerated documents, Plaintiffs ask that the Court review these documents "although it seems likely that these e-mails will be protected by the attorney client privilege," to ensure Plaintiffs did not waive the privilege by transmitting the documents to third parties.[3] (Mot. at 8). Defendants address each of these e-mails individually.

### (i) E-mail from Counsel to John Weil, Supervisor Slater's Legislative Aide

■ Defendants assert "this document is the paradigm of attorney-client privilege" and concerns correspondence that is the subject of this litigation. (Opp'n. at 5). Defendants further maintain the document has never been shared outside the County. The Court sees no basis to question Defendants' assertion that the document has in fact not been transmitted outside the county. Therefore, the Court finds this document falls within the attorney-client privileged and Plaintiffs' Motion to Compel with regard to this document is DENIED. The Court declines to conduct an in camera review.

### (ii) E-mail from County Counsel to Diane Bardsley and John Sansone

■ John Sansone is County Counsel and Diane Bardsley is Special Assistant County Counsel. Defendants contend, Plaintiffs can tell from the date of the e-mail that this message was generated the day District

---

**3.** The Court finds the nature of Plaintiffs' allegations and request with regard to these document is border-line frivolous and indicates a failure to abide by the framework of the rules of discovery as outlined in the Fed.R.Civ.Pro.

Judge Huff held a hearing on one of Plaintiffs' prior lawsuits. The fact that the e-mail discusses certain subjects addressed at the hearing, reveals mental processes and renders the document attorney work-product. The Court therefore DENIES Plaintiff's Motion for Protective Order with regard to this document and declines an in camera review.

### (iii) (iv) & (v) E-mails from County Counsel to Patricia Boaz dated January 18, March 21, & March 30, 2000

Trish Boaz ("Boaz") is a legislative aid to elected member of the Board Pam Slater. Defendants indicate that by the date of these messages, they were generated shortly after the state court hearing in another of Plaintiffs' prior related lawsuits. While it is unclear from the papers whether Boaz is a current or former legislative aid, the attorney-client privilege protects the communication as to either circumstance. (See *Chen,* 99 F.3d 1495, 1502 "...since the corporate employee cannot waive the corporation's privilege, the same individuals as an exemployee cannot do so.") As an aid to a Board member, Boaz is within the penumbra of the privilege because she is presumptively acting on behalf of her superior in connection with events related to legal advice. *See Id.* Because of the timing of the documents, Defendants assertion, and the discussion above, the Court finds that theses documents are attorney-client privileged. As such, the Motion to Compel with regard to these documents is DENIED. The Court also declines in camera review.

Lastly, Plaintiffs generally address the California Public Acts Privilege and its inapplicability to any of the documents in question. In response, Defendants argue that Plaintiffs' analysis is misplaced in that all the documents, with the exception of the Notes described above to which Defendants assert the deliberative process privilege, have been produced. Because the remainder of the documents have apparently been produced, as to the Notes, the discussion of the deliberative process privilege below moots the application of the California Public Acts Privilege. Therefore, any discussion with regard to the California Public Acts Privilege is unnecessary.

Plaintiffs' Motion to Compel is therefore GRANTED in part and DENIED in part.

### B. *Defendants' Motion for Protective Order*

Plaintiffs seeks to depose Boaz, *supra,* and John Weil ("Weil"), two legislative aides to elected member of the Board, Pam Slater, to discover information acquired and advice provided in the course of their discussions with Supervisor Slater about her position regarding Plaintiffs' project. Plaintiffs also intend to ask Boaz and Weil about conversations the aides had with Supervisor Slater's constituents who live near the site of the proposed project. Plaintiffs request the depositions go forward unimpeded.

Defendants object to the deposition and related document production arguing that the proposed inquiry into the internal deliberative process surrounding Supervisor Slater's decision-making process and her discussions with her close aides violates the long recognized deliberative process privilege and should not be allowed on the facts of this case. Defendants thus, seek a protective order prohibiting Plaintiffs from deposing Boaz and Weil and preventing access to Notes as described above.

### (a) Relevance

The scope of discovery in this action is governed by Rule 26(b), Fed.R.Civ.P., which provides "[t]he parties may obtain any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery..." *See generally Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965) ("It is well settled that discovery issues in federal court are subject to federal rules of civil procedure.") Defendants claim the only relevant information these witnesses have is protected under the deliberative process privilege and therefore not discoverable. (Mot. at 2). Specifically, Defendants argue that to the extent Plaintiffs seek to ask the Board aides about their conversations with constituents, they have already questioned

the constituents, making the discovery cumulative. (Mot. at 2 fn. 1) Moreover, Defendants assert that what the members of the public said to the aides, is irrelevant unless injected into discussions with Supervisor Slater, in which case, the deliberative process privilege protects this information from discovery. (*Id.*).

Plaintiffs contend Boaz and Weil were percipient witnesses to all acts at issue in Plaintiffs' claims and would provide relevant testimony about the factual circumstances that took place before the Board discussion. (Opp'n. at 2). Plaintiffs further argue they are entitled to discover all facts surrounding the Board's decision to uncover evidence of discriminatory intent, breach of contract or denial of Plaintiffs' constitutional rights by way of the decision. (*Id.*)

Assuming without agreeing, the aides talked with Slater about discussions they held with the public, Defendants concede the information sought is relevant. As such, the Court turns to a discussion of the deliberative process privilege.

### (b) Existence of the Federal Deliberative Process Privilege [4]

 Plaintiffs make claims under 42 U.S.C. §§ 1983 and 3601, et seq., as well as the Fourteenth Amendment of the United States Constitution. As a result, federal privilege law applies in this case. Fed. R.Evid. 501. *See United States v. Irvin,* 127 F.R.D. 169, 171 (C.D.Cal.1989), *citing generally* 2 Weinsteins Evidence § 501[02] (1988), ("In federal question cases, federal privilege law, rather than the privilege law of the forum state applies.") As with any privilege, the burden of establishing the application of the deliberative process privilege is on the party opposing discovery. *Artfield Builders Inc. v. Village of Buffalo Grove,* 1992 WL 314185, *1 (N.D.Ill.1992) *citing United States v. Board of Educ. of City of Chicago,* 610 F.Supp. 695, 698 (N.D.Ill.1985).

Defendants move for a Protective Order preventing the depositions of Boaz and Weil,

contending the deliberative process privilege extends to elected Board members and aides thereby prohibiting discovery. (Mot. at 2–9). Plaintiffs argue that the privilege was never intended to protect anything other than intra-governmental documents passed between various agencies of the executive branch. (Opp'n. at 5). Plaintiffs say this privilege does not apply because it has never been successfully invoked to preclude depositions of the type at issue. (*Id.*).

In *Irvin, supra,* a case upon which both Defendants and Plaintiffs heavily rely, the court recognized the existence of a federal privilege for pre-decisional, non-factual, non-public communications occurring within federal agencies. *Irvin,* 127 F.R.D. at 172 *citing generally In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 580–81 (E.D.N.Y.1979) ("The primary rationale for the intra-governmental opinion privilege is that effective and efficient government decision making requires a free flow of ideas among governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.") *Id.* In *Corporacion Insular de Seguros v. Garcia,* 709 F.Supp. 288, 296 (D.P.R. 1989), the court opined, "the main justification for the deliberative process privilege has little to do with the separation of powers, as opposed to the legislative privilege, and much to do with the public policy of protecting confidential exchanges of opinions and advice within the executive branch." *Corporacion,* 709 F.Supp. at 295, *citing Kaiser Aluminum & Chemical Corp. v. United States,* 141 Ct. Cl. 38, 157 F.Supp. 939 (1958). As a result, the *Corporacion* court found the objective of the deliberative process privilege was one of protectionism. *Id.* citing *In re "Agent Orange" Prod. Liab. Litig.,* 97 F.R.D. 427, 434–36 (E.D.N.Y.1983); *See also United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances

---

4. Plaintiffs devote a portion of their Opposition to refuting Defendants' assertion of a state legislative privilege. However, it is clear from Defendants' brief they are asserting the federal deliberative process privilege not the state legislative privilege. The Court's focus therefore is the deliberative process privilege.

and for their own interests to the detriment of the decision-making process.")

In likening the deliberative process privilege to the attorney-client privilege or the husband-wife privilege, the *In re Franklin* court found that "the assumption is that 'government, no less than the citizen, needs open but protected channels for the kind of plain talk that is essential to the quality of its functioning.'" *In re Franklin*, 478 F.Supp. 577, 581, *citing Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C. 1966), aff'd. on opinion below 384 F.2d 979, cert. denied 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). However, the *In re Franklin* court found that the scope of the privilege is limited and "only protects expressions of opinions or recommendations in intragovernmental documents; it does not protect purely factual information." *In re Franklin*, 478 F.Supp. at 581.

■ Courts have found the application of the deliberative process privilege is a two-step process. *Artfield*, 1992 WL 314185, *1. First, the discovery opponent must show that the privilege applies to the information at issue. *Id.* Second, decisions establish the qualified nature of the privilege by requiring courts to balance the need for disclosure against the need for governmental secrecy. *Id.* In *Artfield*, plaintiffs, an apartment developer that sought to build multiple family rental units in an area zoned for multiple family housing, brought a motion to compel production of Board members for deposition. *Id.* According to plaintiffs, defendants sought to dissuade them from building multiple family rental units but instead to build multiple family condominiums. *Id.* Plaintiffs refused to change their plan and defendants eventually rezoned the parcel for one acre single family residential units and in the process, denied plaintiffs' previously filed application for a permit to build rental units. *Id.* As a result, plaintiff filed suit alleging violations of the Fair Housing Act, the Fourteenth Amendment, Sections 1981 through 1983, and tortious interference with business expectancies. *Id.*

In applying the two-step analysis, the *Artfield* court found the privilege inapplicable. In so doing, the court adhered to two corollary factors. *Id.* Namely, the court found, (1) the privilege is inapplicable to factual or objective material outside the deliberative process; and (2) a predecisional, deliberative communication sheds the privilege if adopted as policy or in public dealings. *Id.* at *2 *citing United States v. Board of Educ. Of City of Chicago*, 610 F.Supp. 695, 698 (N.D.Ill.1985) *citing Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854 (D.C.Cir.1980).[5] Based on this analysis, the *Artfield* court found defendants failed to meet their burden of demonstrating the applicability of the privilege because "defendants were seeking to protect after-the-fact recollections and/or justifications" of the Board members decision to rezone. *Id.* The court opined that such information was neither predecisional nor deliberative and therefore not protected. *Id.*

■ Here, while the Court finds the *Artfield* reasoning persuasive, the case at bar is distinguishable in that Plaintiffs in this case are in fact seeking information of a predecisional, deliberative nature. Specifically, Plaintiffs seek to discover information and advice these aides provided and information these aides acquired in the course of their discussions with Supervisor Slater about her anticipated vote on Plaintiffs' project. As a result, the Court finds, in this particular instance, the privilege is applicable.

*(c) Scope of the Deliberative Process Privilege*

While the federal deliberative process is "firmly entrenched in federal law," the more

---

5. In *Coastal*, the Court of Appeals for the District of Columbia found that in considering the deliberative process privilege, "[a] strong theme of [the Court's] opinions has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal*, 617 F.2d at 867. In so finding, the *Coastal* court cited *Sterling Drug Inc. v. FTC*, 450 F.2d 698, 708 (D.C.Cir.1971), where the Court of Appeals for the District of Columbia found that "the policy of promoting the free flow ideas within the agency does not apply [], for private transmittals of binding agency opinions... These are not the ideas and theories which go into the making of the law, they are the law itself and as such should be available to the public." *Coastal*, at 868, *citing Sterling*, at 708.

narrow issue of whether the privilege protects state legislators has been described as an 'open question.' *Irvin*, 127 F.R.D. at 172, fn. 4, *citing Corporacion Insular de Seguros v. Garcia*, 709 F.Supp. 288, 296. In *Irvin*, the court noted differences among the districts in applying the federal deliberative process privilege. For example, in *In re Grand Jury*, 821 F.2d 946, 958 (3rd Cir. 1987), the Third Circuit found that the federal "deliberative process privilege protecting federal executive officials 'provides a useful analogy for a confidentiality-based privilege for state legislators.'" *Irvin*, at 172 *citing In re Grand Jury*, 821 F.2d at 958, cert. denied, 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762. In *United States v. Hooker Chemicals & Plastics Corp.*, 114 F.R.D. 100 (W.D.N.Y.1987), the district court applied a deliberative process privilege to communications involving state legislators. *Irvin*, at 172, *citing Hooker Chemicals*, 114 F.R.D. 100. Likewise, other courts have applied the deliberative process privilege to communications involving local, non-legislative officials. *Irvin*, at 172, *citing e.g., Grossman v. Schwarz*, 125 F.R.D. 376 (S.D.N.Y.1989); *Skibo v. New York*, 109 F.R.D. 58, 63–64 (E.D.N.Y.1985).

Here, the Court finds the reasoning of the *Irvin* court persuasive. In that case, the court extended the scope of the privilege, and found that "[i]n terms of the alleged need for secrecy surrounding deliberations, there is no principled distinction between the County Supervisors and those government officials who currently enjoy a deliberative process privilege." *Irvin*, at 172. In so finding, the *Irvin* court reasoned that "if there exists a need to protect candid private communications among federal executive individuals and their staff, the need to protect candid private communications among county officials and their staff is no less compelling." *Id.*

 Here, as in *Irvin*, the Court finds merit in extending the privilege to the Board's legislative aides and therefore finds that non-factual, non-public, deliberational discussions ·between Board Members and their aides have qualified protection from disclosure. However, reaching that conclusion does not end the analysis. As mentioned before, the Court must evaluate a number of factors in determining whether to uphold or override this qualified privilege. *Irvin*, at 173. That analysis follows.

> *(1) & (2) The Interest of the Litigants in Accurate Judicial Fact Finding and The Availability of Comparable Evidence from Other Sources*

In *Irvin* the court found "the desirability of accurate fact finding weighs in favor of disclosure (as it would in any case)." *Irvin*, at 173. In this case, Plaintiffs argue, "the possibility of invidious discrimination herein makes the interest even weightier." (Opp'n. at 7). Defendants assert that the interest here is no greater, and that other factors such as the availability of a vast administrative record weighs decidedly against disclosure.

In weighing these factors, the Court is compelled to take the analysis a step further and determine whether the government's interest in nondisclosure outweighs the interests of the litigants .and public in disclosure. *See In re Franklin*, 478 F.Supp. 577, 582, *citing e.g., Jabara v. Kelley*, 75 F.R.D. 475 (E.D.Mich.1977); *United States v. Article of Drug Consisting of 30 Individually Cartoned Jars More or Less*, 43 F.R.D. 181, 190 (D.Del.1967); *United States v. Beatrice Foods Co.*, 52 F.R.D. 14, 20 (D.Minn.1971). In *In re Franklin*, the district court found that "strong competing interests must be weighed against the government's interest in nondisclosure," putting foremost the interest of the litigants, and "ultimately of society in accurate judicial fact finding." *In re Franklin*, 478 F.Supp. 577, 582. In so finding, the court weighed the "public interest in opening for scrutiny the government's decision making process," and found that as a general rule, "the lower the level of the official making the observation and the lower the level of abstraction. ., the less the need for the privilege." *Id.*

Here, while the "primary aim is to avoid disruption of the consultative function of the government," it cannot be said that this goal would be compromised or lost as a result of the proposed depositions. Moreover, in weighing the government's interest in non-

disclosure with the litigants interest in accurate judicial fact finding, the Court agrees with Plaintiffs' assertion that the possibility of discrimination favors disclosure. Defendants maintain the administrative record serves the same purpose. However, the evidence Plaintiffs seek to elicit upon deposing the aides, namely that of a discriminatory intent, does not typically lay dormant in an administrative record. Plaintiffs seek interpretations of information the aides, members of a public entity, received from the public at large. In performing this public function, the Court finds that the public is entitled to know how these aides did their analysis. As a result, the Court finds the interest of the litigant in accurate judicial fact finding and the availability of comparable evidence from other sources weighs in favor of disclosure.

### (3) The Relevance of the Evidence Sought

Here, Defendants point to *County of Los Angeles v. Superior Court*, 13 Cal.3d 721, 727–28, 119 Cal.Rptr. 631, 532 P.2d 495 (1975), where the California Supreme Court undertook an extensive analysis of the doctrine that "precludes judicial delving into the subjective mental processes of individual legislators." In that case, the Court found that " [g]iven the general rule that the validity of legislation does not turn on judicial motive, the mental processes of individual legislators becomes irrelevant to the judicial task.' " (Mot. at 5 *citing Superior Court*, 13 Cal.3d at 727, 119 Cal.Rptr. 631, 532 P.2d 495). Defendants argue that in light of this analysis and according to *Superior Court*, the evidence Plaintiffs seek to elicit is irrelevant.

Plaintiffs indicate the purpose of the testimony sought is to inquire about meetings the aides had with third parties and the ways in which this land use decision deviated from ordinary policies and procedures. (Opp'n. at 7). Plaintiffs argue this information is directly relevant to whether or not there is circumstantial evidence of discriminatory intent, whether the County breached their contractual Stipulated Judgement with Plaintiffs, and whether the County denied Plaintiffs' rights. (Opp'n. at 7).

While Plaintiffs assert that they seek to inquire about meetings with third parties and the ways in which this land use decision deviated from ordinary policies and procedures, in seeking information that was generated in an effort to educate and inform Supervisor Slater, Plaintiffs are in essence seeking information related to the deliberative process. However, in *Superior Court*, the Supreme Court addressed the inability to delve into the subjective mental processes of individual legislators in creating legislation. *Superior Court*, 13 Cal.3d at 726, 119 Cal. Rptr. 631, 532 P.2d 495. While the analysis is helpful, the case at hand is distinguishable in that here, the Board was not creating legislation. Rather, the Board was voting whether or not to uphold the decision of the Planning Commission to approve the Major Use Permit for the Palma de la Reina project. Therefore, Defendants assertion that the information is irrelevant "based on the rule barring judicial probing of lawmakers" is not persuasive. Here again, the Court finds the relevance of the evidence sought weighs in favor of disclosure.

### (4) & (5) The Seriousness of the Litigation & Allegations of Governmental Misconduct

In *Irvin*, the court noted that plaintiffs allegations raised profound questions concerning the validity of the redistricting plan. *Irvin*, 127 F.R.D. at 172. There, the court noted the similarity between the facts in that case with those in *United States v. Board of Education*, 610 F.Supp. 695, 700 (N.D.Ill. 1985), wherein the court stated:

[c]learly, then, this is not the usual deliberative process cases in which a private party challenges governmental action or seeks documents via the Freedom of Information Act, and the government tries to prevent its decision making process from being swept up unnecessarily into the public. Here, the decision making process is not 'swept up into' the case, it is the case…

*Id.* at 174, *citing Board of Education*, 610 F.Supp. at 700.

In this case, Defendants maintain Plaintiffs are using the federal forum to try to overturn a decision that the state courts have

already ruled was valid and proper under state law and the seriousness of the case does not weigh in favor of disclosure of the legislator's mental processes. (Mot. at 7). Plaintiffs maintain that the importance of the issues involved in this litigation clearly favor disclosure.

Similar to *Irvin*, the present action alleges violations of the Federal Fair Housing Act and the California Fair Housing Act which resulted in denial of Plaintiffs' civil rights, equal protection, and due process of law. This is not a typical deliberative process case in which a private party challenges a governmental action. Rather, this is an action alleging violations of federal constitutional magnitude. The tendency is therefore to allow discovery.

### (6) & (7) Role of Government in the Litigation Itself & the Possible Future Timidity by Government Employees

In *Irvin*, the court noted that the County's role in the litigation and the possibility that discovery would inhibit the Supervisors' future communications militated against disclosure. *Irvin*, 127 F.R.D. at 174. Here, Defendants argue that the government's role as a party to the litigation tips in favor of nondisclosure. (Mot. at 7). Plaintiffs assert that courts have consistently found the government cannot hide evidence of wrongdoing behind governmental privileges and that the only possible effect of these depositions would be more caution by government employees who are participating in discrimination and other wrongful conduct citing *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). (Opp'n. at 8).

Here again, because of the nature and the seriousness of the allegations involved in this suit, the Court does not subscribe to the theory that the government's role as a party to the litigation mitigates in favor of nondisclosure. Rather, it is the very nature of the allegations and the role of the government in the litigation itself that tip the scales in favor of disclosure. Moreover, the Court fails to accept that as a result of this case future communications would be chilled. There has been no evidence presented, nor is the Court aware of a glut of cases that might erode the fundamental principles of the privilege. However, if because of this case, members of government agencies acting on behalf of the public at large are reminded that they are subject to scrutiny, a useful purpose will have been served.

### (8) Federal Interest in Enforcement of Federal Law

In *Irvin*, the court found that the federal interest in the present case was compelling as the Voting Act forbids local practices that abridge the fundamental right to vote. *Id.* Here, Defendants agree with Plaintiffs that enforcing federal rights under the Federal Fair Housing Act as well as Section 1983 serve a vital public interest. (Mot. at 8). However, Defendants maintain that a closer examination of the allegations in Plaintiffs' complaint shows that the decision they challenge, the County's vote to request an EIR, has no effect on the rights secured by the federal statutes on which Plaintiffs rely because the County has neither approved no denied Plaintiffs' request to build the assisted facility, but rather, has merely requested additional information.

The record before the Court indicates a substantial delay in the proposed project, a project that the County Planning Commission recommended for approval. If the federal statutes under which Plaintiffs seek relief are not designed for claims such as these, it would be difficult to imagine a scenario where they would be properly invoked. The interest in enforcing these laws is not exclusive to the individual. It is an interest common to every citizen, including the federal government. As a result, this factor again favors disclosure.

### (d) August 11, 1999 Notes Prepared by Board Staff

Lastly, as mentioned in section (A)(1) of this Order, Plaintiffs seek to compel production of the Notes prepared by Board staff for the Board's use at the August 11, 1999 hearing that is the focus of this litigation. In so doing, Plaintiffs argue that there is no indication that the Notes reflect a confidential communication between an attorney and a client.

(Mot. to Compel at 6). Defendants argue that the Notes fall squarely within the deliberative process privilege. For the reasons discussed above, the Court finds that while the Notes do fall within the protection of the privilege, in this case, the privilege yields to the need for disclosure. The Motion to Compel is therefore GRANTED with regard to the Notes. Consistent herewith, Defendants shall furnish Plaintiffs with the Notes.

### CONCLUSION

Based on the foregoing, the Motion to Compel is hereby GRANTED in part and DENIED in part as indicated herein. The Motion for Protective Order is hereby DENIED with regard to the depositions of the two legislative aides to the Board. The depositions shall proceed and any objections based on the deliberative process privilege are overruled.

The Court declines to award attorneys' fees in connection with either motion. IT IS SO ORDERED.